UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANICE MCCARTHY,<br><br>                    Plaintiff,<br><br>v.<br><br>MUSCLEPHARM CORPORATION, RYAN DREXLER AND SABINA RIZVI,<br>                    Defendants. | Civil Action No. _____<br><br>**NOTICE OF REMOVAL OF ALL DEFENDANTS**<br><br>Removed from the Superior Court of New Jersey, Bergen County, Law Division |

TO:     United States District Court - District of New Jersey
        Martin Luther King Building & U.S. Courthouse
        50 Walnut Street
        Newark, New Jersey 07101

With Notice to:

        Clerk of the Superior Court of New Jersey
        Bergen County Courthouse
        10 Main Street
        Hackensack, New Jersey 07601

        Jonathan Nirenberg, Esq.
        Rabner Baumgart Ben-Asher & Nirenberg, P.C.
        52 Upper Montclair Plaza
        Montclair, NJ 07043
        *Attorneys for Plaintiff*

**PLEASE TAKE NOTICE THAT** on June 2, 2022, based on the following allegations, Defendants MusclePharm Corporation ("MusclePharm"), Alex Drexler and Sabina Rizvi (collectively "Defendants"), did and hereby do remove this action from the Superior Court of New Jersey, Bergen County, Docket No. BER-L-002246-22, to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 with full reservation of any and all defenses and objections.

        1.      On or about April 21, 2022, Plaintiff Janice McCarthy ("Plaintiff") filed a civil

action against Defendants in the Superior Court of New Jersey, Bergen County, captioned *Janice McCarthy v. MusclePharm Corporation, Alex Drexler and Sabina Rizvi*, which was assigned Docket No. BER-L-002246-22 (the "State Court Action").  A true and correct copy of the Summons and Complaint in the State Court Action is attached hereto as **Exhibit A**.

2.      Rizvi has not received nor been properly served with the Summons and Complaint in the State Court Action.  A true copy of Plaintiff's defective affidavit of service to Rizvi is attached hereto as **Exhibit B**.

3.      Drexler has not received nor been served with a true and correct copy of the Complaint in the State Action to date.

4.      Removal is timely pursuant to 28 U.S.C. § 1446(b) because this Notice is filed within thirty (30) days after service of the Summons and Complaint upon Rizvi and Drexler -- service that has not yet occurred -- and Defendant MusclePharm consents to same.

5.      Written notice of the filing of this Notice of Removal will be served upon Plaintiff's counsel as required by 28 U.S.C. § 1446(d).

6.      A copy of this Notice of Removal is being served upon counsel for Plaintiff and is being filed contemporaneously with the Clerk of the Superior Court of New Jersey, Bergen County, as required by 28 U.S.C. 1446(d).

7.      Venue is proper under 28 U.S.C. § 1441(a) because the Superior Court of New Jersey, Bergen County is located within the district of the United States District Court for the District of New Jersey.

8.      As is set forth in detail below, the Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the true parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## DIVERSITY OF CITIZENSHIP

9.　　Plaintiff is a resident of New Jersey.  (See Complaint, ¶1).

10.　　Defendant MusclePharm is a Nevada corporation with a headquarters in Las Vegas, NV.

11.　　Defendant Drexler is a resident of Nevada. (See Complaint, ¶3).

12.　　Defendant Rizvi is a resident of Texas. (See Complaint, ¶4).  Accordingly, complete diversity of citizenship existed between the parties at the time Plaintiff's Complaint was filed, and complete diversity of citizenship exists at the time of removal.

## AMOUNT IN CONTROVERSY

13.　　In this action, Plaintiff seeks to recover compensation from Defendants arising from damages allegedly sustained by:  (1) MusclePharm's violation of the Conscientious Employment Act; and, (2) Defendants' fraud in the inducement of her employment with MusclePharm. (See Complaint, ¶¶75-84).

14.　　Plaintiff's Complaint does not specifically allege the monetary damages that Plaintiff has suffered with respect to Defendants' alleged conduct.

15.　　Plaintiff though alleges fraud in the inducement against Defendants and alleges that in reliance on Defendants' representations, promises and assurances, Plaintiff resigned her position with her prior employer and accepted Defendants' job offer.  (See Complaint, ¶11).

16.　　By accepting Defendants' job offer, Plaintiff alleges that she suffered damages of at least $94,500 by foregoing a $64,500 annual bonus from her prior employer and a $30,000 retention bonus from her prior employer.  (See Complaint, ¶¶11-12).

17.　　In total, Plaintiff seeks back and front pay, emotional distress damages, and punitive damages for her claims of fraud in the inducement and violation of the New Jersey

Conscientious Employee Protection Act.

18.     Plaintiffs seek damages far above $75,000 related to Defendants' alleged conduct.

19.     Additionally, Plaintiff's counsel made pre-litigation demand in which Plaintiff estimated her total damages claim at well in excess of $75,000.

20.     While Defendants dispute Plaintiff's entitlement to recover any of the amounts that are or may be sought in this action, in light of the foregoing, upon information and belief, the amount in controversy in this matter exceeds $75,000.

**WHEREFORE**, Defendants respectfully request that the State Court Action be removed from the Superior Court of New Jersey, Bergen County to the United States District Court for the District of New Jersey.

Respectfully submitted,
SPIRO HARRISON
By: */s/ Thomas M. Kenny*
David B. Harrison, Esq.
Dated: Montclair, New Jersey          Thomas M. Kenny, Esq.
     June 2, 2022          *Attorneys for Defendants*

# EXHIBIT A

Jonathan I. Nirenberg (JIN 032431998)
Rabner Baumgart Ben-Asher & Nirenberg, P.C.
52 Upper Montclair Plaza
Upper Montclair, New Jersey 07043-1391
Tel: (973) 744-4000
Fax: (973) 783-1524
JNirenberg@njemploymentlawfirm.com
Attorneys for Plaintiff

|  |  |
|---|---|
| JANICE MCCARTHY,<br><br>Plaintiff,<br><br>v.<br><br>MUSCLEPHARM CORPORATION, RYAN DREXLER AND SABINA RIZVI,<br><br>Defendants. | **SUPERIOR COURT OF NEW JERSEY**<br><br>BERGEN COUNTY<br>LAW DIVISION<br><br>DOCKET NO. BER-L-002246-22<br><br>Civil Action<br><br>**SUMMONS** |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

*Michelle M. Smith* /s/

Clerk of the Superior Court

DATED: April 21, 2022
Name of Defendant to Be Served: Vcorp Services, LLC
Address of Defendant to Be Served: One University Plaza, Suite 507, Hackensack, NJ  07601

Jonathan I. Nirenberg (JIN 032431998)
Rabner Baumgart Ben-Asher & Nirenberg, P.C.
52 Upper Montclair Plaza
Upper Montclair, New Jersey 07043-1391
Tel: (973) 744-4000
Fax: (973) 783-1524
JNirenberg@njemploymentlawfirm.com
Attorneys for Plaintiff

| | |
|---|---|
| JANICE MCCARTHY,<br><br>Plaintiff,<br><br>v.<br><br>MUSCLEPHARM CORPORATION,<br>RYAN DREXLER AND SABINA RIZVI,<br><br>Defendants. | **SUPERIOR COURT OF NEW JERSEY**<br><br>BERGEN COUNTY<br>LAW DIVISION<br><br>DOCKET NO. BER-L-<br><br>Civil Action<br><br>**COMPLAINT &<br>JURY DEMAND** |

Plaintiff Janice McCarthy, as her Complaint against Defendants MusclePharm

Corporation, Ryan Drexler and Sabina Rizvi, says:

## FACTUAL BACKGROUND

1.      Plaintiff Janice McCarthy, an individual, resides at 215 South Highwood Avenue,

Glen Rock, Bergen County, New Jersey 07452.

2.      Defendant MusclePharm Corporation ("MP") is a foreign corporation registered

to do business in the state of New Jersey.   MP does business throughout the state of New

Jersey, including in Bergen County, New Jersey.

3.      Defendant Ryan Drexler ("Drexler"), an individual, is MP's Chief Executive

Officer.   Drexler resides in the state of Nevada.

4.     Defendant Sabina Rizvi ("Rizvi"), an individual, is MP's President.   Rizvi resides in the state of Texas.

5.     In 2021, Mr. Drexler approached MP's current buyer at Amazon, Ryan Thompson, seeking a candidate to replace MP's underperforming head of sales.   Mr. Thompson recommended his former manager, Ms. McCarthy, to Mr. Drexler.

6.     In approximately August 2021, Defendants actively recruited Ms. McCarthy, while she was working as the Senior Digital Director of E-commerce for Revlon in New Jersey, to become MP's Vice President of Sales.

7.     At some point prior to August 2021, MP, closed all of its physical offices and production facilities, and began operating as a fully remote organization.

8.     Drexler and Rizvi interviewed McCarthy remotely while McCarthy was at her home in Bergen County, New Jersey.

9.     During the interview process, Drexler and Rizvi assured Ms. McCarthy that MP (1) was doing well financially, (2) operated in a collaborative manner; (3) was in the process of hiring a Vice President of Marketing, a Vice President of Supply Chain and an outside marketing agency to lead media and drive consumption; and (4) if she accepted the position, Ms. McCarthy would be able to staff her own sales team.

10.     Drexler and Rizvi made those representations to Ms. McCarthy while she was in New Jersey, with the purpose and intent of inducing Ms. McCarthy to accept their job offer to work for them in New Jersey.

11.     In reliance on Defendants' representations, promises and assurances, Ms. McCarthy accepted MP's job offer and resigned from her position with Revlon.

2

12.     By accepting Defendants' job offer, Ms. McCarthy forwent her $64,500 annual bonus for 2021 from Revlon, which she would have received in approximately March 2022.

13.     By accepting Defendants' job offer, Ms. McCarthy also forwent a $30,000 retention bonus from Revlon that she would have received in January 2022.

14.     Ms. McCarthy worked for Defendants from her home in Bergen County, New Jersey.

15.     Most, if not all, of MP's communications with Ms. McCarthy were from or to New Jersey.

16.     Ms. McCarthy never traveled to Nevada or Texas for MP business.

17.     Soon after she began working for Defendants, Ms. McCarthy learned that:

    a.  MP was in an extremely precarious financial position;

    b.  MP operated as an autocracy;

    c.  MP did not employ an outside marketing agency;

    d.  MP had not even begun to interview a Vice President of Marketing;

    e.  MP was sourcing other sales employees without her knowledge;

    f.  MP had experienced extensive layoffs, resignations, terminations and office closings over the six months before they hired her;

    g.  MP's revenue and gross margin were insufficient to sustain its daily operations;

    h.  Defendants were seeking to obtain a cash infusion of $7 million from outside investors that would enable a temporary bridge to fund raw materials and production, in an effort to deliver several months of strong revenue that could justify attaining their goal of MP being listed on the NASDAQ; and

    i.   MP had been delaying payments to its co-manufacturers, and not purchasing raw materials, both of which caused severe product shortages and supply chain disruptions and thereby drastically reducing the inventory of MP and its retail customers, which in turn severely inhibited the company's sales.

18.    In the short time she worked for MP, Ms. McCarthy had numerous accomplishments that favorably impacted (or were expected to favorably impact) the company's gross margin.   For example, she:

    a.   Successfully negotiated a 10% price increase from Amazon;

    b.   Reached a verbal agreement regarding a new 2022 contract with a customer, Coupang, that will mitigate liabilities with a reduction in trade investments and thereby increase MP's EBIDTA;

    c.   Instituted a forecasting model/discipline that was predicated on a detailed projection by sku, whereas prior to her arrival MP did not have any process to provide production with visibility into customer demand;

    d.   Created a new contractual summary by customer, a trade investment summary, and a promotional post analytic process to assess the return on trade spend; and

    e.   Transitioned the Club channel that previously had been managed by a broker/consultant (Club Consulting), and instead managed the customer relationships directly with Costco and BJs.

### Ms. McCarthy Objected to MP's Fraudulent and Illegal Business Practices

    **I.**    **Ms. McCarthy Objected to Defendants' Fraud with Respect to Combat Protein Powder**

19.     Starting in approximately the second quarter of 2021, MP attempted to negotiate varying levels of price increases with its customers without any methodology to substantiate the different price increases with each retailer.

20.     Costco, MP's largest customer, refused to accept MP's price increase.

21.     After Costco refused to accept MP's price increase, Drexler advised MP's co-manufacturer to substitute the protein powder in Combat Protein Powder with a cheaper instantized protein version to improve gross margin.

22.     MP's substitution of a core ingredient in Combat Protein Powder with a much cheaper ingredient ran the risk of causing issues with mixing/stirring consistency.

23.     Defendants implemented this change to the formulation of Combat Protein Powder was executed without informing Costco or McCarthy.

24.     MP's change to instantized protein had a negative impact on the integrity of the Combat Protein Powder.

25.     McCarthy learned about MP's change to instantized protein after Costco notified her about the extensive number of returns and negative reviews from its consumers.

26.     Based on the negative reviews, it emerged that the change in formulation of Combat Protein Powder had an adverse impact on the product's taste, mixability and/or consistency.

27.     Based on the negative reviews, it also was clear there was an issue with respect to the sealing of individual bags of Combat Protein Powder.

28.     Costco demanded that MP take back all products associated with the impacted lot number, and that MP would be responsible for the cost and its freight, which had a projected cost of $1 million.

5

29. Costco also asked MP to explain what had caused the change to the product's taste, mixability/consistency.

30. In addition, Costco questioned whether MP was cutting corners to decrease costs.

31. Ms. McCarthy told Drexler and Rizvi that MP needed to explain the product reformulation to Costco.

32. Drexler and Rizvi actively discouraged Ms. McCarthy from telling Costco about the product reformulation even after the buyer, Anna Forbush, accused MP of cutting corners to save costs at the expense of the consumer.

33. Since MP would incur this unexpected $1 million liability in late October 2021, Defendants came under pressure to deliver a guaranteed $2 million in gross margin in November to meet MP's commitment to its investors who had just extended the $7 million cash investment.

34. Defendants chose to completely reformulate MP's Combat Protein Powder using cheaper ingredients to improve gross margin, and in particular replaced Micellar Casein with Milk Protein Concentrate.

35. When Costco/Ms. Forbush, asked the reason MP had replaced Micellar Casein with Milk Protein Concentrate, Drexler claimed MP had done so based on taste and mixability.

36. Drexler also instructed one of MP's sales employees, Jason Keenan, to initiate a market-wide survey to validate that consumers had taste-tested the new product as a means to tell Costco that consumers preferred the new formulation vs the current one.

37. This survey was conducted with a total of 5 individuals who were solicited in a gym/fitness center by a friend of Drexler who also served as an informal brand ambassador to MP.

6

38.     When Ms. McCarthy learned about the conditions of the "taste test," she expressed her concern to Drexler and Rizvi, and actively expressed that MP should not share this "study" with Costco because its findings were unscientific, inaccurate and misleading.

39.     Rizvi agreed with Ms. McCarthy that MP should not share the results of the "study" with Costco.

40.     Ms. McCarthy told Defendants that MP needed to confirm whether changing Micellar Casein with Milk Protein Concentrate implicated regulatory requirements that would have required MP to create a new UPC code for the new resulting product.

41.     Since MP's goal was to expedite the reformulation to attain new purchase orders and secure shipments in November to meet the investor's guaranteed gross margin target, Drexler immediately dismissed Ms. McCarthy's concerns and made it clear he was not even willing to seek legal advice to determine whether MP was required to use a new UPC code.

42.     Instead, Rizvi conducted informal research on the Internet and claimed MP did not require a new UPC code.

43.     Concurrent with the reformulation of Combat Protein Powder, Costco returned approximately $1 million of Combat Protein Powder due to the negative feedback it had received from its customers.

44.     Instead of replacing the product Costco returned, Mr. Drexler instructed MP's co-manufacturer, JW, to send back to Costco any product that, when visually inspected, did not have any issue with the sealing of the bags.   This enabled MP not to source new materials and produce replacements, and to save costs.   It also amounted to MP/JW sending back to Costco approximately $100,000 (if not more) worth of Combat Protein Powder that Costco had just

7

returned, without informing Costco that it was sending it the exact same merchandise it had returned.

45.     When Ms. McCarthy questioned Mr. Drexler about Defendants returning to Costco approximately $100,000 worth of the product that Costco had returned to MP without telling Costco it was doing so, Drexler blamed MP's former VP of Supply Chain (Scott Crawford), who had recently resigned shortly after he began working for MP as he too was shocked at the disregard for respect, integrity and the treatment of colleagues.

46.     When Ms. McCarthy spoke directly to Jesse Windrix, the President of JW, Mr. Windrix told Ms. McCarthy that Drexler was the one who gave JW the go-ahead to return the product to Costco.

47.     On or about November 5, 2021, Drexler instructed Ms. McCarthy (on a conference call with Rizvi and Derek Walters) to place two orders of the new formulation of Combat Protein Powder for Amazon.   One of those two orders exceeded $800,000.

48.     Ms. McCarthy objected to Drexler's instruction to place those two orders for Amazon, and told Drexler that the orders constituted approximately a full year's worth of sales.

49.     Since MP's "Born to Run" agreement with Amazon required MP to purchase any product that was not sold within 90 days, MP inevitably would have had to purchase the vast majority of those products itself, canceling out most of the supposed revenue from those orders.

50.     Drexler insisted that Ms. McCarthy place the two orders with Amazon in November 2021 because MP desperately needed additional sales.

51.     By placing the two orders with Amazon, Defendants were able to show investors more than $800,000 in additional purported revenue in November 2021.

**II.     Ms. McCarthy Objected to Defendants' Illegal Channel Stuffing**

52.     Ms. McCarthy objected to MP's plan to outsource storage facilities for several customers (Nutrition Systems, Muscle and Strength, and DNA) to house a new product, Combat Energy, so those customers could place much larger initial orders than they could store at their own facilities.

53.     When Ms. McCarthy indicated it would be improper for MP to treat those products as having been sold if they were in facilities controlled by MP, Drexler explicitly instructed her to "do what it takes" to secure those sales.

54.     Ms. McCarthy then asked MP's comptroller, Lon Snook, his opinion about treating products in warehouses controlled by MP as if they had been sold.   Mr. Snook agreed that, as long as the products remained in MP's control (*i.e.*, MP did not transfer control over the goods to the customer), it would be improper to treat them as having been sold or to record the corresponding revenue.

55.     When Ms. McCarthy told Drexler that Mr. Snook agreed with her that it would be improper to treat product as having been sold if it remained in MP's control, Drexler suggested having the customer sign a contract with the storage facility to enable MP to pay for the facility and for the customer to place the orders.

56.     Mr. Snook subsequently resigned from MP.

57.     Ms. McCarthy objected to Drexler's plan to have MP pay for the facility and the customer to place the orders because she reasonably believed doing so would have constituted fraudulent "channel stuffing."

58.     In response, Drexler became belligerent toward Ms. McCarthy, and reprimanded her for not following his strategy and taking his direction.

59.     Drexler instead directed Mr. Keenan to have MP pay for the facility and the customer to place the orders.    Mr. Keenan did so.

### III.    Defendants Retaliated Against Ms. McCarthy

60.     On November 18, 2021, during a telephone call with Ms. McCarthy in New Jersey, Rizvi asked Ms. McCarthy leading questions that reflected MP's anger at her due to her objections to MP's and Mr. Drexler's fraudulent and illegal actions with respect to Combat Protein Powder, channel stuffing, and the two Amazon orders.

61.     Eventually, Drexler inflated the fact that Ms. McCarthy had not copied him, or celebrity spokesperson TJ Dillashaw, on an email to Costco's buyers about MP Combat Energy Drink.    Notably, Ms. McCarthy had copied Rizvi on the that email, and had an innocuous discussion with Rizvi about the email the previous day.

62.     Drexler had guaranteed the creators of the Combat Energy Drink product line $5 million in sales by December 31, 2021, but had not committed any marketing resources or media investment to support sales.

63.     As Ms. McCarthy explained, she had not understood that Drexler wanted to make Mr. Dillashaw (a former UFC fighter who had no prior experience working with the Costco buyer) the primary contact on Combat Energy Drink.

64.     Drexler was angry with Ms. McCarthy because of her objections to his plan to engage in channel stuffing to meet his promise to the creators of the Combat Energy Drink product line.

65.     By that point,. Drexler's frequent belligerence and anger toward Ms. McCarthy made it abundantly clear that her objections to Defendant's fraudulent and illegal activities were

10

falling on deaf ears, and MP was going to continue to instruct her to engage in similar practices and berate her when she refused to do so.

66. As Drexler continued to yell at her, Ms. McCarthy realized she could not continue to work for a company that was repeatedly instructing her to participate in defrauding its customers, investors, shareholders, and prospective shareholders. Accordingly, she refused to participate in MP's fraudulent and illegal actions in the most definitive way she could, and resigned.

67. On December 20, 2021, Ms. McCarthy, in a letter her attorney sent to Drexler and Rizvi, set forth the facts supporting her retaliation claim and asserted her retaliation legal claims asserted in this lawsuit. The parties subsequently engaged in settlement negotiations.

68. On or about April 12, 2022, Defendants terminated their settlement negotiations with Ms. McCarthy.

69. On April 13, 2022, Defendants filed a lawsuit in the United States District Court for the District of Nevada against Ms. McCarthy as well as two employees of MP, Derek Waters and Edgar Habash, Civil Action No. 3:22-cv-00170-CSD (the "MP lawsuit").

70. Defendants expressly included Ms. McCarthy as a defendant in the MP lawsuit in response to the allegations set forth in the December 20, 2021 letter. As MP put it in its Verified Complaint:

> In her counsel's letter of December 20, 2021, she parrots the same false claims and takes up the cause of Walters. Like Habash and Walters, in a virtually extortive measure she suggests that if the information about the channel surfing and forced sales leading to false revenues were to become public, it would impact MusclePharm's ability to raise capital and could cause securities violations. For their silence, Defendants are willing to be bought-off.

71. There is nothing "extortive" in Ms. McCarthy's counsel's December 20, 2021 letter. Rather, it is a fairly typical settlement "demand" letter in which Ms. McCarthy's

11

attorney sets forth the factual and legal basis for a claim under the Conscientious Employee Protection Act ("CEPA") consistent with the allegations in this Complaint.

72.     According to Defendants' allegations in the MP lawsuit, Mr. Walters and Mr. Habash first asserted their claims in February or March 2022.   Accordingly, it is impossible that Ms. McCarthy's December 20, 2021 letter could "parrot" their claims, since they had not made those claims as of December 20, 2021.

73.     The MP lawsuit is baseless and brought in bad faith in an effort to further retaliate against Ms. McCarthy, deter her from pursuing this case, and in an attempt to forum shop.

74.     Defendants' actions have caused Ms. McCarthy to experience emotional distress damages.

## COUNT I
## (CONSCIENTIOUS EMPLOYEE PROTECTION ACT)

75.     Plaintiff repeats and re-alleges each and every allegation set forth above, as if set forth at length herein.

76.     Ms. McCarthy objected to and/or refused to participate in multiple activities she reasonably believed constituted fraud, violated the law, regulations promulgated pursuant to law, a clear mandate of public policy, and/or is otherwise protected from retaliation by CEPA.

77.     Defendant retaliated against Ms. McCarthy for her objections to and refusals to participate in those activities by, *inter alia*, yelling at her, berating her, harassing her, refusing to stop requiring her to participate in their fraudulent and illegal activities, continuing to direct her to participate in their fraudulent and illegal activities, and including her as a defendant in the MP lawsuit.   Defendants directed actions toward Ms. McCarthy in New Jersey.

78.     Defendant's actions constitute harassment, retaliation, and termination in violation of CEPA.

## COUNT II
### (Fraud in the Inducement)

79.     Plaintiff repeats and re-alleges each and every allegation set forth above, as if set forth at length herein.

80.     When Defendants offered Ms. McCarthy the job as MP's VP of Sales, they made numerous material misrepresentations to her.

81.     Defendants knew or should have known Ms. McCarthy would rely on their material misrepresentations.

82.     Ms. McCarthy reasonably relied on Defendants' material misrepresentations in accepting MP's job offer, resigning from her job with Revlon, forgoing her 2021 annual bonus from Revlon, and foregoing her retention bonus from Revlon.

83.     Defendants' actions constitute fraud in the inducement.

84.     MP's upper management, including but not necessarily limited to Drexler and Rizvi, participated in the fraud.

**WHEREFORE**, Plaintiff Janice McCarthy demands judgment and prays for the following relief against Defendants MusclePharm Corporation, Ryan Drexler and Sabina Rizvi, jointly and severally:

A.     Compensatory damages, including back pay and front pay;

B.     Damages for emotional distress;

C.     Attorney's fees and costs;

D.     Pre- and post-judgment interest;

E.     Punitive damages individually against each of the Defendants; and

F.     Such other relief as the Court may deem appropriate and just.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff Janice McCarthy hereby designates Jonathan I. Nirenberg, Esq., as her trial counsel.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to R. 4:10-2(b), Plaintiff Janice McCarthy hereby demands that Defendants disclose to Plaintiff whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action, or to indemnify or reimburse for payment made to satisfy the Judgment. If so, please attach a copy of each, or in the alternative state, under oath and pursuant to a certification: the (1) policy number; (2) name and address of insurer; (3) inception and expiration date; (4) names and addresses of all persons insured thereunder; and (5) the applicable coverage limits.

## DEMAND FOR DOCUMENTS TO WHICH ANSWER REFERS

Pursuant to Rule 4:18-2, Plaintiff Janice McCarthy hereby demands that Defendants produce copies of each and every document or paper to which the Answer refers within five days after service of the Answer.

## JURY DEMAND

Plaintiff Janice McCarthy hereby demands a trial by jury for all issues so triable.

**Rabner Baumgart Ben-Asher**
**& Nirenberg, P.C.**
Attorneys for Plaintiff

Dated:   April 21, 2022                    By: /s Jonathan I. Nirenberg
                                                Jonathan I. Nirenberg

14

## R. 4:5-1 CERTIFICATION

This action is related to a case pending in the United States District Court for the District of Nevada, MusclePharm Corp. v. Derek Waters, Janice McCarthy and Edgar Habash, Civil Action No. 3:22-cv-00170-CSD. Plaintiff Janice McCarthy contests the court's personal jurisdiction over her in that matter. Plaintiff anticipates adding claims for malicious abuse of process and/or malicious prosecution to this action after the Nevada case have been dismissed against her.

I certify that this matter is not the subject of any other action pending in any court or of pending arbitration proceeding, and no other such action or arbitration proceeding is contemplated. Plaintiff knows of no other parties who should be joined in the action.

I further certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

**Rabner Baumgart Ben-Asher**
**& Nirenberg, P.C.**
Attorneys for Plaintiff

Dated: April 21, 2022     By: /s Jonathan I. Nirenberg
                Jonathan I. Nirenberg

# EXHIBIT B

Jonathan I. Nirenberg (JIN 032431998)
Rabner Baumgart Ben-Asher & Nirenberg, P.C.
52 Upper Montclair Plaza
Upper Montclair, New Jersey 07043-1391
Tel: (973) 744-4000
Fax: (973) 783-1524
JNirenberg@njemploymentlawfirm.com
Attorneys for Plaintiff

|  |  |
|---|---|
| JANICE MCCARTHY,<br><br>     Plaintiff,<br><br>     v.<br><br>MUSCLEPHARM CORPORATION, RYAN DREXLER AND SABINA RIZVI,<br><br>     Defendants. | **SUPERIOR COURT OF NEW JERSEY**<br><br>BERGEN COUNTY<br>LAW DIVISION<br><br>DOCKET NO. BER-L-002246-22<br><br>Civil Action<br><br>**CERTIFICATION OF<br>JONATHAN I. NIRENBERG** |

I, Jonathan I. Nirenberg, of full age, hereby certify and say:

1.     I am a shareholder of Rabner Baumgart Ben-Asher & Nirenberg, P.C., attorneys for Plaintiff Janice McCarthy in the above-captioned action.  I submit this Certification as proof of service of the Summons and Complaint upon Defendant Sabina Rizvi pursuant to *R*. 4:4-7.

2.     We attempted to have Defendant Sabina Rizvi personally served with the Summons and Complaint in this action, but our process server was unable to personally serve her.  A copy of the Affidavit of Non-Service, which indicates that the process server could not reach Ms. Rizvi's home because she lives in a gated community, is attached as Exhibit A.

3.     Pursuant to *R*. 4:4-7, on or about April 27, 2022, we sent two copies of the Summons and Complaint to Ms. Rizvi, one by certified mail, return receipt requested, and the other by regular mail.  According to Postal Service records, the certified letter was out for delivery on April 30, 2022, but to date no delivery scan has been provided.  We have not

received a return receipt or other proof that the certified letter was delivered, or a copy of an

unclaimed certified letter from the Postal Service.  Accordingly, pursuant to *R*. 4:4-7, in lieu of

the original return receipt card I have attached a copy of the original return receipt card as

Exhibit B.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  May 19, 2022

Jonathan I. Nirenberg

Exhibit A

## AFFIDAVIT OF NON-SERVICE

| Case: BER L 2246 22 | Court: SUPERIOR COURT OF NEW JERSEY | County: BERGEN | Job: 6985600 (20220421153152) |
|---|---|---|---|
| Plaintiff / Petitioner: JANICE MCCARTHY | | Defendant / Respondent: MUSCLEPHARM CORPORATION, ET AL | |
| Received by: KS Process Service and Courier, inc. | | For: Guaranteed Subpoena Service, Inc. | |
| To be served upon: SABINA RIZVI | | | |

I, Kurt Schedler, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

| | |
|---|---|
| Recipient Name / Address: | SABINA RIZVI, 2800 Chapman Rd, Plano, TX 75093 |
| Manner of Service: | Unsuccessful Attempt |
| Documents: | SUMMONS AND COMPLAINT, CIS, CERTIFICATION |

Additional Comments:
1) Unsuccessful Attempt: Apr 21, 2022, 7:22 pm CDT at 2800 Chapman Rd, Plano, TX 75093
WAITED 15 MINUTES BEFORE GETTING INTO GATED COMMUNITY. NO ANSWER AT THE DOOR. I LEFT A DELIVERY NOTICE. CAD SEARCH SHOWS DEFENDANT HOMESTEADS AT THIS ADDRESS.

2) Unsuccessful Attempt: Apr 22, 2022, 7:34 am CDT at 2800 Chapman Rd, Plano, TX 75093
GATED COMMUNITY. NO ACCESS. WAITED 20 MINUTES.

3) Unsuccessful Attempt: Apr 23, 2022, 8:25 pm CDT at 2800 Chapman Rd, Plano, TX 75093
NO ACCESS. GATED NEIGHBORHOOD. WAITED 20 MINUTES.

| | | |
|---|---|---|
| _Kurt Schedler_  4-25-2022 | | _Subscribed and sworn to before me by the affiant who is personally known to me._ |
| Kurt Schedler | Date | _Michelle Shaffer_ |
| PSC1098 | | Notary Public |
| | | 4-25-2022      9-15-2023 |
| KS Process Service and Courier, inc. | | Date      Commission Expires |
| 2221 Justin Road 119-328 | | |
| Flower Mound, TX 75028 | | |

MICHELLE SHAFFER
Notary Public, State of Texas
Comm. Expires 09-15-2023
Notary ID 12874027-3



FIRST CLASS MAIL

U.S. Postal Service
CERTIFIED MAIL. RECEIPT

Postage $ 1,730

Certified Fee 3,750

Return Receipt Fee 3,050

Restricted Delivery Fee

Total Postage & Fees $ 7,930

Sent To Ms. Sabina Rizvi
Street, Apt. No.; 2800 Chapman Rd
or PO Box No.
City, State, ZIP+4 Plano, TX 76093

7014 0150 0000 4173 9736

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Ms. Sabina Rizvi
2800 Chapman Rd
Plano, TX 75093

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    □ Agent
                                     □ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   ☑ Certified Mail®     □ Priority Mail Express™
   □ Registered          □ Return Receipt for Merchandise
   □ Insured Mail        □ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number
   (Transfer from service label)   7014 0150 0000 4173 9736

PS Form 3811, July 2013          Domestic Return Receipt

DuPont Tyvek®
8002322010 | www.allstatelegal.com
STOCK # 03014
ALL-STATE LEGAL®